# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30593

United States Court of Appeals
Fifth Circuit

**FILED**

April 12, 2018

Lyle W. Cayce
Clerk

JAMARCUS SAM,

      Plaintiff - Appellant

v.

SHONE CHASE RICHARD, Officer, in his individual and official capacity;
CITY OF OPELOUSAS,

      Defendants - Appellees

---

Appeal from the United States District Court
for the Western District of Louisiana

---

Before KING, HAYNES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Jamarcus Sam sued Officer Shone Chase Richard, the City of Opelousas, and the City's insurer under 42 U.S.C. § 1983 for excessive use of force and unjustified detention. Sam also brought related state law claims. The district court granted summary judgment on Sam's federal claims and dismissed the state law claims. We affirm in part and vacate in part.

I.

The following facts are drawn from the summary judgment evidence before the district court, viewed in the light most favorable to the plaintiff. On the evening of February 10, 2015, sixteen-year-old Jamarcus Sam walked with

No. 17-30593

some friends to the Walmart in Opelousas, Louisiana. Once inside the store, the group split up and browsed until one of Sam's friends got into an argument with another girl. The group left the store, and one of Sam's friends, Eddie Stag, stole a jacket.

At 9:49 p.m., Officer Shone Chase Richard of the Opelousas Police Department was dispatched to respond to the reported theft. Richard drove to the Walmart in his patrol car and encountered Sam's group nearby. According to Sam, Richard activated his emergency lights and Sam's group scattered and ran.

After a short chase, another officer saw Sam and Stag, and threatened to release a dog if the boys didn't stop running. Sam lay face down on the ground and put his hands on the back of his head. Sam stated in deposition that Richard then slapped Sam across the face, kneed him, placed him in handcuffs, and shoved him against a police car. The slap did not break the skin, but a scrape against the concrete drew blood from Sam's hip. Richard agreed in his testimony that after Sam stopped running, Sam did not resist being detained, but Richard denied using any force other than handcuffing.

While Richard was detaining Sam, another officer handcuffed Stag, and both boys were placed in the back of Richard's patrol car. Richard drove back to the Walmart, arriving at 10:03 p.m. Once back at the store, a Walmart security guard approached the patrol car and identified Stag as the person who stole the jacket. Sam remained in Richard's patrol car until 10:45 p.m., when Richard drove Sam and Stag to the Opelousas Police Station. Once at the station, another officer called Sam's mother, who promptly picked him up.

Sam did not visit a doctor the night of the incident. He stated in deposition that, after the incident, he "just felt like [he] got in a normal fight." The incident "didn't mess [Sam] up physically," but it did cause him to bleed on the scene and "left a scab." Sam denied that the slap to his face left a bruise,

2

No. 17-30593

but one of Sam's friends stated in deposition that, after the incident, Sam "looked like he got hit" and "his face was a little red and bruised." Finally, according to medical records generated from a medical appointment about six weeks after the incident, Sam complained of lingering pain in his left hip.

Sam sued Richard,[1] the City of Opelousas, and the City's insurer in the United States District Court for the Western District of Louisiana. In his amended complaint, Sam asserts liability under 42 U.S.C. § 1983 for unjustified detention and excessive force, as well as related state law claims. The district court granted summary judgment in favor of the defendants on all the federal claims, and dismissed the state law claims. Sam appeals.

II.

We review a district court's grant of summary judgment de novo. *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 388 (5th Cir. 2017). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)). To decide if the non-movant has raised a genuine issue, we view all facts and evidence in the light most favorable to him and draw all reasonable inferences in his favor. *Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017).

Sam's first claim is for excessive force in violation of the Fourth Amendment. "To prevail on an excessive force claim, a plaintiff must show '(1) an injury that (2) resulted directly and only from the use of force that was

---

[1] Sam's amended complaint identifies Richard only as "John Doe." Richard was later substituted for John Doe.

excessive to the need and that (3) the force used was objectively unreasonable.'" *Windham v. Harris County, Texas*, 875 F.3d 229, 242 (5th Cir. 2017) (quoting *Hamilton v. Kindred*, 845 F.3d 659, 662 (5th Cir. 2017)). Where, as here, the officer asserts a defense of qualified immunity, the plaintiff must show that the officer's use of force "violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The district court concluded that Sam's injuries were *de minimis* and therefore could not support an excessive force claim. This was error. In *Alexander v. City of Round Rock*, we reversed dismissal of an excessive force claim. 854 F.3d 298, 310 (5th Cir. 2017). In doing so, we explained that even insignificant injuries may support an excessive force claim, as long as they result from unreasonably excessive force:

> Although a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances. *Any* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only. Consequently, only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment. In short, as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force.

*Id.* at 309 (quotation marks, citations, and modifications omitted). Viewing the facts and evidence in the most favorable light, Sam's alleged injuries—which include minor bleeding—meet *Alexander*'s "some injury" test. *See, e.g., Bone v. Dunnaway*, 657 F. App'x. 258, 262 (5th Cir. 2016) ("Although Bone's allegation of injury could be characterized as de minimis—bruising and a swollen cheek—

4

whether an injury is cognizable depends on the reasonableness of the force, not just the extent of injury."); *Schmidt v. Gray*, 399 F. App'x. 925, 928 (5th Cir. 2010) (pain, soreness, and bruising resulting from an officer's slamming a car's trunk lid on a suspect's finger was a legally cognizable injury); *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) ("dizziness, loss of breath, and coughing" caused by choking was sufficient injury to assert constitutional violation).

On the facts as recounted by Sam, Richard's use of force was objectively unreasonable at the summary judgment stage. Although Sam initially ran, he states in deposition that he was lying face down on the ground with his hands on his head when Richard kneed him in the hip and pushed him against a patrol car. Such a use of force on a compliant suspect is excessive and unreasonable. *See, e.g., Alexander*, 854 F.3d at 309 (although suspect refused to exit vehicle, once he was removed it was objectively unreasonable to throw the suspect on the ground, knee him in the back, and push his face into the ground).[2] Furthermore, it was clearly established at the time of this incident that pushing, kneeing, and slapping a suspect who is neither fleeing nor resisting is excessive. *See Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (reversing grant of summary judgment); *see also Darden v. City of Ft. Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018) (reversing grant of summary

---

[2] We observe that at least one other circuit has held a slap to the face to be similarly excessive and unreasonable. *See Lucier v. City of Ecorse*, 601 F. App'x. 372, 374, 379 (6th Cir. 2015) (slap to face was "gratuitous violence" that could support excessive force claim); *Carico v. Benton, Ireland, & Stovall*, 68 F. App'x. 632, 637 (6th Cir. 2003) (noting that a plaintiff "can clearly claim excessive force against [an officer] for [a] slap to the face"). We also note that prior to the overruling of our "serious injury" standard for excessive force claims, *see Hudson v. McMillian*, 503 U.S. 1, 4 (1992), we had held that allegations that an officer "slapped [an arrestee] several times with his open hand" would not support a claim. *Mark v. Caldwell*, 754 F.2d 1260, 1261 (5th Cir. 1985).

No. 17-30593

judgment); *Carroll v. Ellington,* 800 F.3d 154, 177 (5th Cir. 2015).[3] Richard's contention that the force alleged by Sam would have produced more serious injuries is a question of credibility which is not appropriate for resolution at this stage. Accordingly, we hold that Sam's evidence of excessive force is sufficient to survive a motion for summary judgment.[4]

### III.

Sam also appeals the district court's grant of summary judgment on his unjustified detention claim. Sam bases this claim on a specific period: the time between when a Walmart employee identified Stag as the actual thief and when Richard and Sam arrived at the station.[5] Richard does not dispute that Sam spent this time handcuffed in the back of Richard's cruiser. The Radio Log, which both parties rely on, shows that the identification occurred sometime after 10:03 p.m., and Sam arrived at the police station at 10:51 p.m.

The district court held that Sam was not arrested; his detention was a mere investigative stop. The parties dispute this contention. We conclude that, even if the district court erred in holding that Sam's detention did not amount to an arrest, *see, e.g.*, *Turner v. Lieutenant Driver*, 848 F.3d 678, 693-94 (5th Cir. 2017), the undisputed summary judgment evidence shows the arrest was

---

[3]     We note that the Supreme Court recently reversed denial of qualified immunity in an excessive force case. *See Kisela v. Hughes*, No. 17-467 (U.S. Apr. 2, 2018) (per curiam). But, as that decision instructs, "[u]se of excessive force is an area of the law 'in which the result depends very much on the facts of each case.'" *Id.*, slip op. at 5 (quoting *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)). The facts at issue in *Kisela* bear little resemblance to those before us here. *See id.*, slip op. at 1 (officer shot woman who "was holding a large kitchen knife, had taken steps toward another woman standing nearby, and had refused to drop the knife after at least two commands to do so.").

[4]     In finding that Sam's injuries were *de minimis*, the district court relied on *Ikerd v. Blair*, 101 F.3d 430 (5th Cir. 1996). But in that case the district court granted judgment as a matter of law in favor of defendants on grounds that the plaintiff's injuries were *de minimis*—and we *vacated*. *Id.* at 433-35.

[5]     In his briefing before this court, Sam expressly waived any claim based on the detention between when Sam left the Walmart and when his mother picked him up.

supported by probable cause that Sam committed a crime. We therefore affirm the district court's grant of summary judgment on this point.

To remain within the bounds of the Fourth Amendment, a warrantless arrest must be supported by probable cause. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). "Probable cause exists when all of the facts known by a police officer 'are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense.'" *State v. Kleinert*, 855 F.3d 305, 316 (5th Cir. 2017) (quoting *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc)). The test is objective, not subjective. Accordingly, the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Finally, an officer who asserts qualified immunity will not be held liable for an arrest if he "reasonably but mistakenly conclude[d] that probable cause [wa]s present." *District of Columbia v. Wesby*, 138 S. Ct. 577, 591 (2018) (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

In Louisiana, it is a crime for "any pedestrian to cross an interstate highway, except in the case of an emergency." La. Stat. Ann. § 32:216. Richard arrived on the scene in response to a dispatch describing people running from the Opelousas Walmart.  He encountered Sam running through the parking lot of a gas station near the Walmart. The only way to get from the Opelousas Walmart to the gas station without crossing Interstate 49 is to take the Creswell Lane underpass. Richard drove down Creswell to intercept the suspects and didn't see Sam walking along the underpass. Finally, a Walmart employee identified Stag, who was detained with Sam, as having recently shoplifted from the store. These facts, known to Richard, were sufficient for a reasonable person to conclude that Sam crossed Interstate 49. Richard

therefore had probable cause to believe that Sam violated Louisiana's prohibition on crossing interstate highways.[6]

Sam makes no more than a conclusory argument that Richard lacked probable cause to arrest him for crossing the highway. Instead, Sam asserts that the highway-crossing offense is only an after-the-fact justification for the arrest.[7] But the test is objective; Richard's state of mind plays no part. *Devenpeck*, 543 U.S. at 153. Accordingly, even if Sam's detention amounted to an arrest, it was supported by probable cause. We therefore affirm the district court's grant of summary judgment on this claim.

## IV.

Based on the conclusion that Richard committed no constitutional violation, the district court also granted summary judgment on Sam's claims against the City of Opelousas and its insurer. This judgment is vacated for the reasons offered in Part II above. We decline to consider in the first instance whether Sam can meet the demanding test for municipal liability.

Finally, after granting summary judgment on all of Sam's federal claims, the district court declined to exercise supplemental jurisdiction over Sam's state law claims. *See* 28 U.S.C. § 1367(c)(3). Because at least one of Sam's federal claims survives, we vacate this dismissal as well.

---

[6]     It makes no difference to our analysis that § 32:216 is a misdemeanor, *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), or that the offense was committed outside the officer's presence, *Fields v. City of S. Houston, Tex.*, 922 F.2d 1183, 1189 (5th Cir. 1991).

[7]     Sam also argues that the highway-crossing offense is not sufficiently related to the shoplifting offense to support probable cause. In doing so, Sam relies on older cases holding that, to support a lawful arrest, the offense establishing probable cause must be "closely related" to the offense identified by the arresting officer at the time of arrest. But the Supreme Court overruled this line of cases in *Devenpeck*. 543 U.S. at 154. Therefore, even assuming that Richard intended to arrest Sam for shoplifting rather than crossing the highway, the latter offense is sufficient to support probable cause and defeat Sam's claim. *Id.*

No. 17-30593

V.

The district court's: (1) grant of summary judgment as to Sam's excessive force claim against Richard is VACATED; (2) grant of summary judgment as to Sam's unjustified detention claim against Richard is AFFIRMED; (3) grant of summary judgment as to Sam's claims against the City of Opelousas and its insurer is VACATED; and (4) dismissal of Sam's state law claims is VACATED. The case is remanded for further proceedings.